Per Curiam :
This is a suit by plaintiff who is a retired Army officer released from active duty on April 3, 1947, not by reason of physical disability. Plaintiff now seeks to recover the disability retired pay of a lieutenant colonel from April 3, 1947. He alleges that he was permanently incapacitated from performing military service; that he should *464 have been retired for physical disability and that the findings and actions of certain retiring boards, including the Army Disability Review Board, were arbitrary, capricious and contrary to law. Upon consideration of the pleadings filed herein, the argument of counsel for the parties and the findings of fact of the trial commissioner, the court approves the commissioner’s finding that plaintiff has not established that the decision of the Department of the Army denying disability retirement to him was arbitrary or capricious. Plaintiff’s petition will be dismissed.
It is so ordered.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Wilson Cowen, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, a citizen of the United States, was bom November 21,1896, in Chillicothe, Missouri, and now resides in Tennessee.
2. Plaintiff enlisted in the United States Navy on March 26, 1917, and was honorably discharged on August 15, 1919. His rank at the time of discharge was Chief Radio Electrician. Plaintiff was in excellent health at the time of his enlistment in the Navy as he had previously been theretofore. At the time of his discharge he was found by the Navy to be physically fit and eligible for reenlistment.
3. On March 31, 1930, plaintiff accepted an appointment as Second Lieutenant, Military Intelligence, Officers Reserve Corps, and was again so reappointed in 1935 and in 1940. Plaintiff was given physical examinations by the Army Medical Corps on September 3, 1929, July 10, 1931, and February 8, 1935, and on each of these occasions was found to be in normal health.
4. Plaintiff was commissioned as a Second Lieutenant, Army of the United States, on March 16, 1942, and entered upon extended active duty on that same day. He was promoted to First Lieutenant on May 30, 1942; to Captain on December 8, 1942; to Major on June 22, 1943; and to Lieutenant Colonel on March 26,1947.
5. Plaintiff is credited with the following periods of active service: March 26, 1917 to August 15, 1919; August 17, *465 1931 to August 30, 1931; March 16, 1942 to December 9, 1945; and from December IP, 1946 to April 3,1947.
6. Plaintiff was placed on the Army of the United States Petired List in the grade of Lieutenant Colonel on November 30, 1956, with entitlement to retirement pay from December 1, 1956, under the provisions of Sections 301 and 302 of the Act of Congress approved June 29, 1948 (P.L. 810, 80th Congress), having been found, upon application, to be eligible for such benefits by reason of age and satisfactory military service.
■7. On December 22, 1941, and before he was commissioned in the Army of the United States, plaintiff underwent a physical examination at Key Field, Mississippi. The report of the examination stated that his respiratory system was normal and that an X-ray of the chest was “essentially negative.” The examining medical officers concluded that plaintiff met the physical requirements and recommended that he he accepted with minor physical defects.
8. On March 10, 1942, plaintiff underwent a final-type physical examination for active duty at the station hospital, Camp Joseph T. Pobinson, Arkansas. The report stated that his respiratory system was normal but that an X-ray of his chest disclosed a circular area of increased density in the lower left chest. The report found that plaintiff was permanently incapacitated for active service on account of “lesion, tuberculous, active, primary”, and “lesion, metastatic.” Limited service was not recommended.
9. On March 16,1942, plaintiff entered on extended active duty pursuant to Special Orders No. 61 issued the same date at Camp Tyson, Tennessee. The orders stated that plaintiff, having been found physically qualified for active duty, should comply with his original active duty orders dated March 10,1942. However, the records of the Department of the Army do not contain a copy of a Camp Tyson physical examination of plaintiff dated March 16, 1942, nor do the Army records disclose that any revision action was ever taken by the Army regarding the physical examination of March 10, 1942, at Camp Joseph T. Pobinson.
10. After receiving notice of the results of the physical examination conducted at Camp Joseph T. Pobinson on *466 March 10, 1942, plaintiff consulted.1 his personal physician, Hr. John E. Whiteleather, a radiologist of Memphis, Tennessee, who had examined plaintiff on March 15, 1942. An X-ray made of plaintiff’s chest at that time showed that it was normal, except for the presence of a small and somewhat rounded calcification about the size of an ordinary olive in the left lobe. Aside from this irregularity, no other type of respiratory disability was noted. Plaintiff then proceeded to Camp Tyson, where he was reexamined. Thereafter, he received the orders mentioned above, stating that he was physically fit for active duty and directing him to report according to his orders.
For a period of approximately 19 months thereafter, the condition of plaintiff’s health was good; he did not experience any difficulties with his respiratory system, and did not lose any time off from duty on account of illness or physical disability.
11. A chronology of plaintiff’s medical history during the years 1943 and 1944 discloses the following:
(a) December, 1943. Plaintiff had a “cold” but remained on duty.
(b) January, 1944. Plaintiff became worse and was in bed for two weeks. Diagnosis was influenza or possible pneumonia.
(c) January-May, 1944. Recovery was not complete. Plaintiff ran a temperature as high as 103° but remained on a duty status. Diagnosis of chronic sinusitis with chronic cough.
(d) May, 1944. Plaintiff had an attack of dysentery along with a number of other men in his outfit. Medical treatment at that time revealed an atypical pneumonia. He was in bed on board ship for 4 or 5 days, then up and about in the 7th Station Hospital in Africa.
(e) _ June 6, 1944. Plaintiff was discharged to duty. He still had a productive cough, but was temperature-free for 4 or 5 days.
(f) August, 1944. Cough improved but still present.
(g) August, 1944. (end of the month). Plaintiff again had dysentery, and cough became worse with temperature rise. He continued on duty and gradually improved.
(h) October 1, 1944. Plaintiff was admitted to the 43rd General Hospital in France.
*467 (i) October 6, 1944. Plaintiff was discharged to duty after a diagnosis of chronic sinusitis was made. His cough was mild.
* * * * *
12. On March 3,1945, plaintiff arrived at the Thayer General Hospital, Nashville, Tennessee, where X-rays of the G.I., G.U., and1 respiratory system were repeated. On April 6, 1945, plaintiff was transferred to Kennedy General Hospital because of his chest condition; at that hospital sinus and chest X-rays were repeated and, as a result, the diagnosis was chronic bronchitis and chronic sinusitis. Plaintiff’s cough remained present but in a mild condition.
13. On May 18, 1945, a disposition board convened at Kennedy General Hospital, Memphis, Tennessee, and made the following diagnosis:
1. Bronchitis, chronic, cause and type undetermined1, moderate. LOD [Line of Duty] : Yes. Improved.
2. Neoplasm, lower lobe, left lung, nonmalignant, type undetermined. LOD: No, EPTS [Existed prior to service]. Unchanged.
3. Sinusitis, chronic, non-suppurative, maxillary, ethmoids, moderate, cause undetermined. LOD: Yes. Improved.
The board concluded that plaintiff’s bronchitis originated in December 1943 and that he became unfit for duty on November 9, 1944. The board recommended that plaintiff be returned to duty in a temporary limited status service in a high, dry climate for a period of 6 months and that he automatically revert to full military duty status at the expiration of that period.
14. On August 20,1945, plaintiff was admitted to Kennedy General Hospital as a casual from delay en route to the Quartermaster [Replacement Pool in Ogden, Utah. He appeared before a disposition board which convened at the hospital on September 10, 1945, and recommended that plaintiff be reclassified as qualified for permanent limited service only and that he be ordered to appear before an Army retiring board.
15. On September 20, 1945, plaintiff appeared before an Army retiring board convened at Kennedy General Hospital. The board made the following findings:
*468 Major Howard C. Smiley, 0-272974, QMC, is incapacitated for active service; that said incapacities are the result of an incident of service; that the causes of said incapacities are:
1. Bronchitis, chronic, moderate, cause and type undetermined.
2. Sinusitis, chronic, non-suppurative, maxillary, ethmoid, moderate, cause undetermined1.
That the causes of said incapacities are incident to the service; that said incapacities originated on or about December 1943, and first became manifest in military service in December 1943, and that said incapacities are permanent.
The board expressed the opinion that plaintiff was capable of performing duty in a limited service assignment and recommended that he be considered for permanent limited service in a fixed installation within the continental United States.
16. Plaintiff was placed on terminal leave on September 22, 1945, and ordered relieved from active duty effective December 9, 1945. Plowever, on October 28, 1945, the Office of the Surgeon General notified the Adjutant General’s office that the findings made by the Army retiring board on September 20, 1945, were not concurred in because “the record reveals that this officer has remained ambulatory and symptom free except for the mild cough; it is the opinion of this office that the board may well find this officer not incapacitated for active service.” It was recommended that the record be returned to the board for reconsideration of its findings.
17. On November 27, 1945, a second Army retiring board convened at Kennedy General Hospital with plaintiff in attendance. The board made the following findings:
a. That Major Howard C. Smiley is permanently incapacitated for active service.
b. That such incapacity is:
(1) Bronchitis, chronic, moderate, cause and type undetermined.
(2) Sinusitis, chronic, non-suppurative, maxillary, eth-moid, moderate, cause undetermined.
c. That the approximate date of origin or inception is December 1943.
*469 d. That the date the officer became incapacitated for active service is August 1945.
e. That the cause of such incapacity in item b(l) above, is an incident of service, and in item b(2) above, is not an incident of service.
f. That the cause of the incapacities has been permanently aggravated by military service.
g. That the said incapacities for active service are the results of incidents of service.
h. That the officer’s disability was not incurred in combat with an enemy of the United States, nor did it result from an instrumentality of war in line of duty.
The board recommended that plaintiff be assigned to permanent, limited service.
18. On J anuary 22,1946, the Adjutant General was notified by the Surgeon General that due to the minimal nature of plaintiff’s disability, he was not considered incapacitated for active service and, therefore, that the Surgeon General did not concur in the findings of the Army retiring board that reconvened on November 27,1945.
19. Thereafter, on February 11, 1946, plaintiff received written notice that the Secretary of War had disapproved the findings of the Army retiring board, that plaintiff was considered qualified for general service and not entitled to retirement pay benefits, and that since no suitable assignment was available, he would not be recalled to active duty. He was further advised that at the expiration of 6 months from the date of the notice, he could request authorization to appear before an Army retiring board, without expense to the Government.
20. After considering clinical records, laboratory findings, and the results of a physical examination of plaintiff, a disposition board, which convened at Kennedy General Hospital on May 23, 1946, found plaintiff to have the following diagnosis:
No disease, observation for chronic bronchitis and sinusitis. Unchanged. LOD: Yes.
The board recommended that plaintiff be reclassified to full military duty and that he be ordered to appear before a reconvened Army retiring board.
*470 21. On May 28, 1946, plaintiff was again physically examined and appeared before a third Army retiring board at Kennedy General Hospital. Two Army physicians who were appointed1 by the board as medical witnesses stated that the evidence before them was insufficient for a complete consideration of plaintiff’s case because his clinical records and old X-rays were not available. Their diagnosis was that plaintiff was permanently incapacitated for full military service and became so incapacitated on November 7, 1944; that the cause of his incapacity was bronchitis, chronic, moderate (cause and type undetermined), which originated in December 1943 as an incident of service. The medical witnesses expressed the opinion that plaintiff was not disqualified for permanent limited service but they did not recommend that he be placed on temporary limited service for a period of 6 months. Both of the medical witnesses stated that plaintiff should have complete bronchograms to determine whether or not he had bronchiectasis.
Plaintiff also appeared and testified before the board, stating that he had had six or seven attacks of bronchitis over a period of a year and that the longest of these attacks had lasted about 10 days.
At the conclusion of the proceedings, the board found that plaintiff was not permanently incapacitated for active service and recommended that he be given further hospitalization in a specialized general hospital.
22. Plaintiff was recalled to active duty at Fitzsimons General Hospital, Denver, Colorado, effective December 17, 1946, for the purpose of further observation, treatment, and appearance before an Army retiring board. He was admitted to the hospital on December 18, 1946, and was physically examined. A disposition board which convened at the hospital on January 21, 1947, recommended that plaintiff was physically qualified for general military duty.
23. Plaintiff was given another physical examination on January 25, 1947, and appeared before an Army retiring board at Fitzsimons General Hospital on January 29, 1947. The Army medical witnesses appointed by the board testified in effect that an examination of bronchograms made at the hospital did not show that plaintiff had bronchiectasis, *471 although bronchograms taken in France on December 31, 1946, showed some evidence of bronchiectasis on the right side of the chest; that plaintiff’s physical examination and recent X-rays showed that he had some pulmonary fibrosis and emphysema; that plaintiff’s was not a typical case of chronic bronchitis but that he had a disease of the pulmonary system which was subject to remissions and exacerbations, which incapacitated him for short periods of time on numerous occasions; that the spot on the lower left side of plaintiff’s chest had no bearing on his present or future service because of definite X-ray evidence that there had been no change in this spot since preinduction X-ray films were taken and that, in their opinion, plaintiff was not incapacitated for active service. Plaintiff also appeared and testified before the board. He stated that he had been advised he had chronic bronchitis or mild, diffused bronchiectasis, plus a chronic sinusitis resulting from an attack of influence or pneumonia in December of 1943, while he was on active duty. He also stated that in view of the advice which had been given to him, it was his opinion that he was only partially incapacitated.
The retiring board found that plaintiff was not permanently incapacitated for active service, and this finding was approved by order of the Secretary of War on March 24, 1947.
24. Plaintiff was given a terminal physical examination at Fitz'simons General Hospital on March 24, 1947. On March 26, 1947, he was given a terminal leave promotion to Lieutenant Colonel, Army of the United States, and on April 3, 1947, he was released from active duty, not by reason of physical disability.
25. On May 15,1947, plaintiff submitted an application to the Adjutant General for a review of the decision of the Army retiring board which had convened at Fitzsimons General Hospital on January 29, 1947. Plaintiff requested an opportunity to appear before the board and that he be retired with full benefits. On September 19, 1947, he was notified that his request had been referred to the Secretary of War’s Disability Eeview Board for consideration and that the records would be reviewed1 by that board on October 22, 1947.
*472 26. Plaintiff’s medical records and the prior board proceedings were furnished to the disability review board. In addition, plaintiff submitted an affidavit from Dr. O. F. McCown, Jr., of Memphis, Tennessee, to the effect that he had examined plaintiff in 1945 while plaintiff was a patient at Kennedy General Hospital and had, as a result of that examination, recommended that plaintiff be retired because of chronic suppurative bronchitis acquired in line of duty. Plaintiff also submitted the affidavit of Dr. Duane Carr, a thoracic surgeon of Memphis, Tennessee, who stated therein that as a result of an examination, including broncho-grams, it was his diagnosis that plaintiff was suffering from bilateral pulmonary emphysema with bilateral moderately advanced bronchiectasis.
27. During the proceedings of the Army disability review board, which commenced October 22, 1947, an examiner’s report was read into the record and plaintiff appeared with counsel and testified before the board. Consideration of his case was deferred until an interpretation could be obtained from Walter Peed General Hospital of X-ray films which plaintiff had submitted to the board.
28. When the board reconvened on November 21, 194-7, it considered a report of plaintiff’s X-ray films which had been furnished to the board by the Chief, Radiological Service of Walter Eeedi General Hospital, under date of October 29, 1947. The report stated as follows:
Two films of the chest are essentially negative except for a spherical lesion in the extreme left base adjacent to the visceral pleura. The mass is sharply defined and homogeneous in density. It is 8.3 x 2.5 cm in size. This lesion apparently has not changed in size since December 1946 according to X-ray report in clinical record. The lipiodol which partially fills the bronchial tree reveals no evidence of bronchiectasis. There is slight increase in aeration of the right base indicating emphysema. The single film from Carr Dunning Skinner reveals normal bronchial tree and does not show the lesion noted in the other films.
Impression: Tuberculoma, left base; emphysema right base.
At the request of plaintiff’s counsel, the disability review board adjourned to give plaintiff an opportunity to submit *473 his bronchograms to qualified physicians in Washington, D.C., and to present their report to the board for its consideration.
29. On December 18, 1947, the Army disability review board reconvened to consider additional evidence to be supplied by the plaintiff. Plaintiff’s counsel thereupon advised the board that he “submitted the X-rays and the bron-chograms to Dr. Aubrey O. Hampton, who is with Drs. Groover, Christie and Merritt, at the Garfield Hospital”. Dr. Hampton’s statement dated November 29, 1947, addressed to the disability review board, stated as follows:
The interpretation of the X-ray films of the chest on the above mentioned patient, taken 10/8 and 10/14/47 is as follows:
At the first examination there is evidence of retained lipiodol in the alveoli of the right lung. There is also evidence of bilateral lower lobe emphysema and a non-calcified primary tuberculous nodule in the left lower lung field.
A bilateral lower lobe bronchogram demonstrates normal bronchi on the right except for obstruction of the bronchus to the anterolateral segment of the right lower lobe. The bronchi of the left lower lobe and the lingula of the upper lobe are incompletely filled, apparently due to obstruction of most of them near their distal extremities. These bronchi are not dilated but present a “limbless tree” appearance.
The complete examination demonstrates evidence of emphysema and asthma. There is no evidence of bron-chiectasis.
Plaintiff’s counsel then read an affidavit of Dr. Duane Carr, of Memphis, Tennessee, to the board. Dr. Carr stated therein that he disagreed with the interpretation of Dr. Hampton in regard to the bronchograms and that he adhered to his prior diagnosis of bronchiectasis in addition to asthma and emphysema.
30. The findings of the Army disability review board, dated December 18,1947, were as follows:
1. That Major Howard C. Smiley, 0-272974, QMC, is incapacitated for active service.
2. That said incapacity is not the result of an incident of service.
*474 3. That the cause of said incapacity is Tumor mass, type undetermined, asymptomatic, lower lobe, left lung.
4. That the cause of said incapacity is not incident to service.
5. That the said incapacity originated at some unknown date prior to entry on active duty.
6. That said incapacities are permanent.

Conclusions:

The symptoms complained of and physical findings recorded during active service with respect to the tra-cheobronchial tree are associated with the pre-existing tumor mass and do not constitute permanent aggravation. Chronic sinusitis and bronchiectasis not confirmed.
31. Thereafter, plaintiff applied to the Veterans Administration for disability compensation and on January 14,1949, he was notified by the Veterans Administration that service-connected! disability had been established for his lung condition, right lower lobe, rated at 10 percent disabling from April 4, 1947 to October 7, 1947, and 30 percent disabling from October 8, 1947. The report also stated that sinusitis, which had been claimed by plaintiff, was not found during his last period of hospitalization.
32. On August 26, 1952, plaintiff applied to the Adjutant General for a review of the findings of the Army disability review board, alleging therein that the decision of the Veterans Administration constituted new evidence 'in support of his claim. The Adjutant General referred the application to the Army disability review board, which concluded that plaintiff had submitted no new evidence which would warrant a formal rehearing. The Adjutant General so advised the plaintiff and his agent on September 26, 1952.
33. On November 25, 1953, plaintiff filed an application with the Army Board for Correction of Military Eecords to have his records corrected to show that he was permanently disabled in line of duty on the date of his release from active duty. The Army Board for Correction of Military Eecords referred plaintiff’s application to the Office of the Surgeon General, which office concluded that the plaintiff’s records did not substantiate his theory that he should have been retired because of physical disability under the laws, rules, regulations, and policies then in effect. On or about October 24,1954, the Office of The Adjutant General notified *475 plaintiff that a thorough examination of his records failed to reveal material evidence of error or injustice in his not having been retired by reason of physical disability at the time of his relief from active duty; and that the Army Board for Correction of Military Records had concluded that there was no justification for a formal hearing and review of his case.
34. On November 30, 1956, the Adjutant General notified plaintiff that he had been placed on the Army of the United States Retired List, in the grade of Lieutenant Colonel, as of November 30,1956, with entitlement to retirement pay from December 1, 1956, under the provisions of Title III of the Act of June 29,1948 (62 Stat. 1081) [for age and service and not for disability].
35. Prior to October 9,1953, the Department of the Army had no published medical standards of fitness or unfitness for the retention of officers on active duty. However, a “Manual for Officers” had been developed in the Office of the Surgeon General because all cases were reviewed at that time in the Physical Standards Division of the Surgeon General’s Office. The manual set forth certain standards for retention to be used in adjudicating applications for retirement on grounds of physical disability. In substance, the manual stated that bronchitis and emphysema, when present in a mild degree, were considered insufficient for retirement or for finding that an officer was incapacitated for general military service. Bronchiectasis was not specifically mentioned in the manual.
The manual also provided that sinusitis was not usually considered sufficient for incapacitating an officer for active service but that when the disease was moderate to severe in degree, chronic, suppurative and especially with polyps, and did not respond to treatment, it might be considered sufficient to incapacitate the officer for active service.
36. From November 26,1948 to December 3,1948, plaintiff was under observation and examination by the Veterans Hospital at Memphis, Tennessee. Physical examinations made while plaintiff was in the hospital included skin tests for tuberculosis and a bronchoscopy. As a result of such *476 examinations and tests, the Veterans Administration made the following diagnosis:
Dg. 1. Minima,! bronchiectasis, right lower lobe. Untreated. Unchanged.
Dg. 2. Minimal emphysema, secondary to Dg. 1. (Untreated. Unchanged.)
Dg. 3. Lichen planus. Untreated. Unchanged.
Dg. 4. Tuberculoma, probable, left lower lobe. Untreated. Unchanged.
37. While there was much evidence to the contrary, the findings and decision made adversely to plaintiff’s application for disability retirement are supported by evidence. In the light of the whole record and in view of the physical standards applied at that time in cases involving retirement for physical disability, plaintiff has not established that the decision of the Department of the Army denying disability retirement to him was arbitrary or capricious.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is therefore dismissed.