Per Curiam:
This case was referred to Trial Commissioner C. Murray Bernhardt, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on February 3,1966. Exceptions to the commissioner’s findings and recommended conclusion of law were filed by plaintiff. Defendant made no exceptions to the commissioner’s findings or recommended conclusion of law. The parties have filed briefs and the case has been argued orally. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is, therefore, not entitled to recover and his petition is dismissed.
Commissioner Bernhardt’s opinion,* as modified by the court, is as follows:
OPINION
Ever since Friedman v. United States, 159 Ct. Cl. 1, 310 F. 2d 381 (1962), cert. denied, 373 U.S. 932 (1963), jelled certain of the principles controlling the disposition of military disability pay cases,[1] it has been accepted without dissent in subsequent decisions of this court that where the claimant has requested and been denied a hearing before a military retiring board his cause of action accrues at the moment of denial for the purpose of the statute of limitations (28 U.S.C. 2501). Cayce v. United States, 170 Ct. Cl. 402 (1965), and cases cited. This is the predicament of the present plaintiff, who was released for nonphysical reasons from the Air Force on July 29, 1954, and neglected to file his petition here until December 22, 1960. Despite an impressive list of physical and nervous ailments claimed by plaintiff, including the *204 residuals of serious injuries suffered in May 1944, when, as a bomber navigator, he was shot down over Austria and imprisoned for the remainder of World War II, three medical boards pronounced him fit for active duty when discharged in 1954 after extensive examinations and he was transferred to the Reserve following more than 12 years of credited and creditable active commissioned service.
Although the plaintiff has received compensation from the Veterans Administration ever since late 1954 for disabilities rated from 30 percent to 40 percent, and was released from the Inactive Reserve to the Retired Reserve in 1957 on a finding of physical unfitness to remain in the Inactive Reserve, the court is precluded by the statutory bar from inquiring into the merits of his contentions. His transfer to the Retired Reserve in 1957 did not accrue a new cause of action or revive the old one, though it was predicated on a face-about finding of service-connected physical unfitness by reason of ailments not shown to be appreciably different from those existing at the time of his release from active duty three years earlier for nonphysical reasons. Cf. Stone v. United States, 160 Ct. Cl. 128 (1963); Ferguson v. United States, 166 Ct. Cl. 310 (1964). If the 1957 action were considered by itself, plaintiff would not be entitled to disability retirement pay on the basis of that transfer from the inactive reserve to the retired reserve. See section 402(a) of the Career Compensation Act of 1949, 63 Stat. 809, 816; Walters v. United States, 175 Ct. Cl. 215, 225, 358 F. 2d 957, 962 (1966) ; Wales v. United States, 132 Ct. Cl. 765, 770, 130 F. Supp. 900, 903 (1955). Nor would plaintiff be entitled at this time to longevity retired pay, even if the 1957 transfer were invalid, since he is not yet 60 years old. Ferguson v. United States, 174 Ct. Ct. 1288 (1966).
The petition must be dismissed.
FINDINGS of Fact
1. Plaintiff was born on June 16, 1918. He entered the military service in March 1942 and at the time was in good health. He qualified as a navigator and was commissioned a Second Lieutenant in the Army on December 11, 1943. He served on military duty continuously until his release on *205 July 29, 1954, in the grade of Captain, and he was then assigned to a Reserve unit.
2. While performing duties as a navigator he was shot down in Austria in May 1944. The flames from the plane burned his face, hands, and neck and, upon alighting on parachuting he experienced a sudden jerking. Two days later he was taken a prisoner-of-war and was released at the end of World War II. He did not receive adequate medical attention for his injuries while a prisoner-of-war. On his return to military control he resumed his flying assignments and was transferred to the Air Force in 1947.
3. On June 28, 1950, he was admitted to the Walter Reed Army Medical Center complaining of a spot on the right lung, and at that time an examination revealed varicosities of the left leg. During this hospitalization an operation was performed for the varicosities. On September 26, 1950, an operation was performed for the removal of a solitary granulomatous lesion in the right lower lobe (lung). Subsequently, chest X-rays showed a complete expansion of the right lung with minimal residuals and he was returned to a duty status on November 15, 1950. The diagnoses were tu-berculoma, right lower lobe, cured; varicose veins, left leg, cured.
4. A Flying Evaluation Board was convened as there had been a temporary suspension of his flying status because of the above hospitalization. On a physical examination conducted on January 18, 1951, the examiner recommended revocation of temporary suspension and found plaintiff qualified for flying Class II. Subsequently, and based upon action taken by the Flying Evaluation Board, plaintiff was returned to a flying status on September 28, 1951. On the annual physical examination, he was found physically qualified for flying duty, Class II, on June 30, 1952.
5. Plaintiff continued with his flying duties and on August 17, 1953, was advised that pursuant to board action he had been selected for release under the reduction in force program, to be accomplished within 60 days. In acknowledging receipt of this communication, on August 21, 1953, plaintiff asked that he be allowed to appear before a Physical Evaluation Board. Plaintiff was then advised that recia- *206 mation action had been recommended to retain him on active duty and, accordingly, release proceedings were suspended.
6. (a) Plaintiff was hospitalized at Sampson Air Force Base from January 26 until early June 1954 in connection with his final processing. During this period of over 130 days hospitalization he was on pass 50 days. Pie was examined by Dr. H. C. Smith, a civilian practitioner, at Kingston, Pennsylvania, on March 15 and April 9, 1954. After making the examination of plaintiff’s lungs, the doctor concluded that he was unfit for active military service, due to loss of vital capacity in lungs, dyspnea on exertion, and persistent intercostal neuralgia.
(b) During the hospitalization from January 26, 1954 to early June 1954, referred to above, plaintiff was studied at Sampson Air Force Base Hospital for complaints of chest pain, the residuals of his chest surgery, and his mental condition due to being BJF’d and his worry about having to earn a living in civilian life. A psychiatric consultation revealed anxieties over his feeling “incapable of performing any civilian job.” Despite this normal anxiety over being separated from the military service it was found evident that this patient was attempting to channel his normal anxiety into physical symptoms with the hope that he would be considered ill and unable to continue on any job and possibly be retired for physical reasons.
The examining physician concluded:
During this officer’s hospitalization between January 26 th and early June of 1954 he has at no time shown any evidence of serious disease or any true impairment which would warrant any further medical action leading to further medical treatment or retirement. * * * Recently when informed that there has been no clinical reason for his prolonged hospitalization he has not offered any resistance to this understanding but he has remained quiet on the ward, comes and goes as he pleases, and again presents no physical problem of any kind. * * *
Diagnosis: No mental or physical disease found at this time. * * *
Recommendation: * * * that this officer be returned to full duty status * * *.
*207 A thorough physical examination was conducted on June 17, 1954 preliminary to action by a medical board.
7. A medical board convened at Sampson Air Force Base on July 23, 1954, and diagnosed his condition as—
* * * no mental or physical disease found at this time. History of segumental or wedge resection of right lower lung for granuloma.
and recommended that he be considered physically fit for further military duty and returned to full duty status.
8. After a final type physical examination on July 28, 1954, plaintiff was released from active duty not by reason of physical disability, effective July 29, 1954, and was transferred to a Reserve unit.
9. Plaintiff, through his counsel, demanded a hearing before a Physical Evaluation Board by telegraphic, message and by letter of July 25 and July 26, 1954. In response thereto plaintiff was advised by the Surgeon General by letter dated August 3, 1954, that the case had been fully considered by a medical board three times and that all requirements of a full and fair hearing had been met. This application for a Physical Evaluation Board and a denial thereof was acknowledged by plaintiff in his petition. In a report of medical history for the purpose of a separation physical examination on August 5,1954, the plaintiff stated as follows:
38. My records show that I have been separated as or because of reduction of force but it is my firm belief that my name appeared on reduction of force because of long medical history and because of comparaltive poor health not always able to perform duties efficiently. It is also my firm belief that I have been separated illegally because I was not given an opportunity to appear before the P.E.B. as I believe is my right in accordance with provisions of AF Manual 35-4.
39. I intend to file a claim for compensation as soon as possible for service connected disabilities.
10. After his release from active duty, plaintiff continued with his Reserve activities. He enrolled in the extension courses. On June 15, 1955, his files were reviewed for possible separation, and it was determined that there was insufficient evidence to initiate action at that time.
*208 11. Plaintiff submitted to an annual medical examination dated August 14, 1956, wherein a civilian medical examiner for the Air Force noted a scar on plaintiff’s chest along the fifth rib, moderate and mild varicosities in the left and right legs, respectively, and noted a slight limp on walking and recommended further studies by a chest specialist and a vascular disease specialist. Out of the 60 physical ailments listed on the form, plaintiff checked 28 of them which he claimed to have had at some time. Plaintiff was asked on January 29, 1957, to submit a diagnosis of his condition from the Veterans Administration. Plaintiff was considered permanently physically disqualified for retention in the Reserve on March 25, 1957.
12. On March 27, 1957, the Department of the Air Force advised plaintiff that he was considered medically disqualified for general military service and was eligible for transfer in the Retired Reserve Section without eligibility for retirement annuity. In response thereto plaintiff on April 15, 1957, indicated that he desired to be transferred to the Retired Reserve. On December 12, 1957, orders were issued relieving plaintiff from his assignment and assigning him to the Retired Reserve, effective December 13, 1957, by reason of being found medically disqualified for active duty as a result of a service-connected disability.
13. Shortly after his release from active duty, plaintiff applied to the Veterans Administration for examination and hospitalization. He was first rated by the Veterans Administration at 30 percent disability as of September 27, 1954, and paid compensation of $30 per month. A chest examination on December 30, 1954 resulted in a diagnosis of no evidence of pulmonary TB at that time. On a psychiatric examination dated November 18, 1954, the diagnosis of “anxiety reaction, moderately severe” was noted. On September 26, 1956, the same diagnosis was made by the psychiatrist. A special orthopedic examination was conducted December 30, 1954, with the following diagnosis:
1. RESIDUALS OF SCARS, HEALED, BURN SCARS, LEFT FACIAL AND HAND BILATERAL.
2. RESIDUALS OF SCARS, HEALED, CHEST AND ABDOMEN.
*209 3.FIBROSITIS, CHRONIC, PERIARTICULAR, RIGHT SHOULDER, RIGHT WRIST AND HAND BILATERAL.
4 STRAIN, CHRONIC, LUMBOSACRAL, RIGHT SACROILIAC.
5. MYOSITIS, CHRONIC, HIP BILATERAL, KNEE BILATERAL, AND ANKLE BILATERAL.
6. PES PLANUS, FIRST DEGREE, BILATERAL.
In this examination there was no indication of any spinal fracture. On a second orthopedic examination, October 24, 1956, the above diagnosis was noted. Although an x-ray of the spine was taken, there was no reference to any spinal fracture. On January 11, 1956, a pyelogram revealed a normal study of the kidney with a diagnosis of hydronephrosis.
Effective January 11, 1956, plaintiff was rated by the Veterans Administration for:
1. Hydronephrosis (10%).
2. Anxiety reaction (10%).
3. Varicose veins (10%).
4. Residuals of surgical resection right lower lobe (10%).
5. Residuals trench feet bilateral (10%).
6. Scars (0%), combined (40%), effective January 11, 1956.
His compensation under this rating was $66 per month.
On July 30,1959, the rating was amended to:
1. Residuals trench feet bilateral, moderately severe from 6/22/59.
2. Anxietyreaction
3. Residuals surgical resection right lower lobe (10%) from 7/30/54.
4.Hydronephrosis (0%) from 6/22/59.
5.Varicose veins (0%) from 6/22/59.
6.Scars (0%) from 7/30/54.
7.Combined (40%) from 1/11/56.
14. Plaintiff applied to the Air Force Board for the Correction of Military Records on April 29, 1957, asking that his record be corrected to show that he was retired for physical disability on July 29, 1954. His application was denied on April 23,1958.
15. Plaintiff filed his petition with this court on December 22,1960.
*210 Conclusion op Law
Upon tlie foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is dismissed.

 The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

 THe Friedman case and Lipp v. United States, 157 Ct. Cl. 197, 301 F. 2d 674 (1962), cert. denied, 373 U.S. 932 (1963), together constitute a mother lode of advice in the disability pay field which, since then, has been extensively mined in many other cases of this category.